IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAYMOND GRAVES,

    Plaintiff,

v.

    Case No. _____

AVIS BUDGET GROUP, INC., a Foreign
Profit Corporation,

**JURY TRIAL DEMANDED**

    Defendant.
_____/

## COMPLAINT

Plaintiff Raymond Graves ("Graves" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against the Defendant, Avis Budget Group, Inc., a Foreign Profit Corporation ("Avis" or "Defendant"), and states as follows:

### PARTIES

1. Plaintiff Graves is an individual over 18 years of age and is thus *sui juris*.

2. Graves currently resides in Hillsborough County, Florida, and did at all times relevant to the allegations herein reside in Hillsborough County, Florida.

3. Defendant Avis is a foreign profit corporation authorized to do business in the state of Florida with a principal place of business in New Jersey.

### JURISDICTION AND VENUE

4. This is an action under federal law.

5. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. The state law claim arises out of the same set of operative facts.

7. As a result, the Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Hillsborough County, which is located within the Middle District of Florida.

9. Thus, the Tampa Division is the proper division.  M.D. Fla. Loc. R. 1.02(b)(4).

## GENERAL ALLEGATIONS

10. The Defendant is a car rental and sales agency located at the Tampa International Airport.

11. At all relevant times, the Defendant employed fifteen or more individuals.

12. As such, the Defendant was an employer within the meaning of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act ("ADA"), and the Florida Civil Rights Act of 1992 ("FCRA").

13. Graves was employed by the Defendant from approximately November 2012 until on or about December 15, 2016 as a rental sales agent.

14. In January 2014, Graves was injured in an automobile accident.

15. As a result of his car accident, Graves's physician issued a work-restriction, indicating that Graves would need to be seated, instead of standing, to perform his duties.

16. Graves was able to perform the essential functions of his job with the Defendant with the reasonable seating accommodation.

17. In fact, Graves received awards for his customer service.

18. Starting in late 2014, Graves's manager, Wendell l/n/u ("Wendell"), began punching and kicking the back of Graves's chair to the point that it would inflame Graves's injuries.

19. In early 2015, Graves called the Defendant's Human Resources Hotline to report Wendell's harassing behavior.

20. Graves also reported Ainsworth Pothemont ("Pothemont"), the airport manager, to Human Resources for his allowing Wendell's handicap/disability-based harassment.

21. Subsequently to Graves's reports about Wendell and Pothemont, Pothemont hired other managers who had supervisory authority over Graves.

22. Pothemont directed the new supervisors to hassle Graves about his accommodation.

23. Each time a new manager was hired and gave Graves trouble over his accommodation, Graves would contact the Human Resources Hotline to report the issue.

24. The Human Resources Hotline had its agent, Shayla l/n/u ("Shayla"), attempt to remedy the situation by speaking to Graves.

25. Graves advised Shayla of his accommodation and the on-going harassment and retaliation, both of which were sanctioned by Pothemont.

26. Accordingly, Shayla reached out to Pothemont on multiple occasions to put a stop to the retaliatory conduct.

27. The retaliation did not stop.

28. To the contrary, after Shayla ceased working for the Defendant, Graves's calls to Human Resources went unanswered, as if the Defendant were tired of addressing his complaints.

29. Finally, in late 2016, Pothemont's ongoing desire to retaliate against Graves reached a peak, when Pothemont learned of a misunderstanding that he saw he could use as a pretense for terminating Graves.

30. In fact, when Pothemont met with Graves on or about December 9, 2016 to advise Graves he was being suspended without pay, Pothemont said "I got you now!" revealing his retaliatory intent.

31. Graves was terminated on or about December 15, 2016.

32. Graves dual-filed a charge of discrimination with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC") on or about February 22, 2017.

33. More than 180 days have passed since the filing of the charge of discrimination.

34. The EEOC issued a dismissal and notice of rights on or about May 8, 2018; however, the EEOC transmitted the dismissal letter to Graves at an incorrect address and Graves did not receive the letter until November 6, 2019.

35. This lawsuit is therefore timely filed, with Graves having fulfilled all conditions precedent to this lawsuit.

36. As a direct and proximate result of the Defendant's violations of law, described herein, Graves has required the services of undersigned counsel, to whom he is obligated to remit fees and costs.

## **COUNT I (ADA RETALIATION)**

37. Graves reaffirms and realleges paragraphs 1-36 above.

38. Graves engaged in protected conduct within the meaning of the ADA's anti-retaliation provision when he opposed the disability-based harassment by his supervisor, Wendell, and conduct of Pothemont in sanctioning the harassment.

39. Graves suffered multiple acts of retaliation in Pothemont's encouraging of other supervisors to disregard Graves's accommodation.

40. However, the ultimate act of retaliation was the suspension without pay and termination of Graves's employment, which Pothemont directed.

41. The punitive actions by the Defendant, including, but not limited to the tangible employment actions of suspension and termination, are causally related, in that Pothemont's behavior between the two events overtly showed he harbored a grudge against Graves for reporting him to Human Resources.

42. Thus, the Defendant unlawfully suspended and terminated Graves in retaliation for his protected conduct, in violation of the ADA.

43. As a direct and proximate result of the Defendant's unlawful conduct, Graves has suffered damages, including, but not limited to, lost pay, lost benefits, mental anguish, loss of the capacity to enjoy life, and lost future earnings.

44. These damages have occurred, are on-going, and are reasonably likely to continue into the indefinite future.

WHEREFORE, Graves respectfully demands this Court enter judgment against the Defendant for the following:

a. Backpay, including but not limited to, lost wages and benefits to the date of trial;

b. Front pay or reinstatement;

c. Interest on the amounts awarded, consistent with law;

  d. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering; and

  e. Reasonable attorneys' fees and costs.

## COUNT II (FCRA HANDICAP RETALIATION)

45. Graves reaffirms and realleges paragraphs 1-36 above.

46. Graves engaged in protected conduct within the meaning of the FCRA's anti-retaliation provision when he opposed the handicap-based harassment by his supervisor, Wendell, and conduct of Pothemont in sanctioning the harassment.

47. Graves suffered multiple acts of retaliation in Pothemont's encouraging of other supervisors to disregard Graves's accommodation.

48. However, the ultimate act of retaliation was the suspension without pay and termination of Graves's employment, which Pothemont directed.

49. The punitive actions by the Defendant, including, but not limited to the tangible employment actions of suspension and termination, are causally related, in that Pothemont's behavior between the two events overtly showed he harbored a grudge against Graves for reporting him to Human Resources.

50. Thus, the Defendant unlawfully suspended and terminated Graves in retaliation for his protected conduct, in violation of the FCRA.

51. As a direct and proximate result of the Defendant's unlawful conduct, Graves has suffered damages, including, but not limited to, lost pay, lost benefits, mental anguish, loss of the capacity to enjoy life, and lost future earnings.

52. These damages have occurred, are on-going, and are reasonably likely to continue into the indefinite future.

53. The Defendant's acts were willful and/or in reckless disregard for Graves's legal rights, in that the Defendant is a large corporation with ample resources to know that its conduct was illegal, and with a Human Resources department that ceased helping Graves.

54. Instead, the Defendant allowed Pothemont to continue his campaign of retaliation against Graves, leading all the way up to Graves's termination.

WHEREFORE, Graves respectfully demands this Court enter judgment against the Defendant for the following:

a. Backpay, including but not limited to, lost wages and benefits to the date of trial;

b. Front pay or reinstatement;

c. Interest on the amounts awarded, consistent with law;

d. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

e. Punitive damages; and

f. Reasonable attorneys' fees and costs.

## JURY TRIAL DEMAND

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 4th day of February, 2020.

/s/ Shaina Thorpe
**SHAINA THORPE**
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: angel@thorpelaw.net
**THORPELAW, P.A.**
1228 East 7th Ave., Ste. 200
Tampa, Florida 33605
Telephone: (813) 400-0229
Fax: (813) 944-5223
*Counsel for Plaintiff Raymond Graves*